**MORRIS v. CHESAPEAKE & O. RY. CO.**

Civil Action No. 777.

District Court, N. D. Indiana,
South Bend Division.

Nov. 20, 1947.

Hugh G. Freeland and O. F. Rhodes, both of Peru, Ind., Gilmore S. Haynie, Asst. U. S. Atty., of Fort Wayne, Ind., and H. K. Cuthbertson, of Peru, Ind., for plaintiff.

Albert H. Cole, of Peru, Ind., for defendant.

SWYGERT, District Judge.

This is a proceeding under the Selective Training and Service Act of 1940, as amended, 50 U.S.C.A.Appendix, § 308(e). On October 9, 1947, this cause came on to be tried before the Court without a jury. From the evidence introduced by both the petitioner and the respondent in said trial and from the exhibits on file in said case, the Court finds as follows:

1. Petitioner is a resident of Peru, Indiana, and the respondent is a corporation doing business at Peru, Indiana.

2. Petitioner was employed by the respondent on January 12, 1940, as a telegrapher in Peru, Indiana. He continued to occupy said position until July 26, 1944,

at which time he was inducted into the United States Navy.

3. Petitioner remained in the military service of the United States until May 17, 1946, on which date he received a certificate evidencing satisfactory completion of said military duties.

4. On June 7, 1946, which was less than 90 days after his receiving an honorable discharge in the United States Navy, petitioner resumed his employment with the respondent as a telegrapher.

5. During his employment as a telegrapher the petitioner was a member of the Agents, Telegraphers, Telephone Operators and Leverman Union No. 8. The general Regulations of said Union in its conduct with respondent provided in part as follows:

"Rule 20(a). When additional extra train dispatchers are needed, the positions will be advertised to all employees on the present telegraphers' seniority territory."

6. During all the time in question the petitioner had and has a seniority listing as a telegrapher as of June 12, 1940. Certain of his fellow employees in the Peru territory have had and have the following seniority listings as telegraphers during said time: H. E. Middlekaup, August 17, 1942; J. L. Adkins, November 10, 1942; and W. A. Knipp, December 13, 1916.

7. In filling vacancies in positions of train dispatchers in the employment of the respondent, it was customary and in accord with the union agreement to advertise to all employees on the present telegraphers seniority territory as provided by Rule 20 (a), heretofore quoted. In other words, the vacancy was always offered first to the telegrapher in the territory involved who had the highest seniority. If he did not "bid in" the position or if he failed to pass the examination which was required or to qualify, the telegrapher who had the next highest seniority was given the same opportunity. This continued until the position was filled.

8. During the time the petitioner was in military service, four vacancies in the train dispatcher position occurred in the Peru territory. No bulletin of the first three vacancies was sent to petitioner and he was not given an opportunity to "bid in" or to qualify for said positions. These positions were filled by the said H. E. Middlekaup, J. L. Adkins, and W. A. Knipp. Their seniority as dispatchers are dated respectively, June 3, 1945, August 25, 1945, and May 16, 1945.

9. The local chairman of the Order of Railroad Telegraphers sent a bulletin regarding the fourth vacancy to the petitioner while he was yet in military service and the petitioner thereafter mailed in his "bid" for said position.

10. On July 24, 1946, petitioner took an examination for train dispatcher and thereafter received a certificate from the respondent stating that he was promoted August 3, 1946, to the position of train dispatcher.

11. Since that date petitioner has been a member of the Train Dispatchers Union No. 4. This Union has jurisdiction over the Peru Territory of the respondent. The General Regulations of said Union agreement with the respondent provide in part as follows:

"Rule 5(a). Seniority as dispatcher will date from date employee passes the required examination and qualifies as dispatcher. Where more than one employee on a dispatcher's seniority territory is examined and qualifies as dispatcher on the same day, their seniority dates as dispatcher will be in the order of seniority they held on the telegrapher's roster. Each employee examined as dispatcher, when qualified, will be given a certificate of qualification showing seniority stand.

"Rule 5(b). In filling vacancies in positions as dispatcher, seniority shall be observed and the senior applicant will be given the position if he has the necessary ability."

These regulations have been effective since October 1, 1944; however, the above quoted rules have been in force within the Peru territory since 1926.

12. The respondent, through the local chairman of the Telegrapher's Union, sends advertisements or bulletins of vacancies of train dispatcher positions to only those telegraphers who are in the territory in-

volved. After a telegrapher has "bid in" the position, he is given an examination by a board composed of other dispatchers. Upon passing such examination, he is given a preliminary qualifying session and then, if the chief train dispatcher passes him, he is given a seniority date coincidental with his first day of duty as a dispatcher.

13. On October 20, 1946, the petitioner wrote the respondent wherein he stated he wished to claim seniority as a train dispatcher beginning June 3, 1945.

## Opinion

The respondent argues that the petitioner's seniority rights are fixed by the union contracts governing telegraphers and dispatchers and particularly those sections of the contracts which are set out in the findings. It contends that these provisions afford no automatic means of promotion from a telegrapher to a train dispatcher; that, although each newly created or vacated dispatcher's position is offered to the telegraphers in the order of their seniority, a successful applicant must pass the required examination and be found qualified before he is given the position. It is pure conjecture, so respondent maintains, to say that if the petitioner had not entered the army but had continued in his employment, he would have been qualified and promoted ahead of Middlekaup and Adkins, who were junior to him on the telegraphers' seniority roster, but who are now ahead of him on the dispatchers' seniority list. The respondent's contention is summed up when its counsel says in his brief that the petitioner asks that he be given "as of a date some thirteen months prior to his qualification as a dispatcher, a position which he did not hold at the time of his induction, existing under the framework of a seniority system created by an entirely different contract which had no connection with his own service until the time of his qualification, notwithstanding a provision in that contract that his seniority should date from the date he passed the required examination and qualified as a dispatcher."

The facts in this case make the contention of the respondent seem plausible

and persuasive when they are viewed in their purely technical aspect. However, before a final conclusion is reached, they must be tested by the underlying purposes of Section 8 of the Selective Training and Service Act. Those purposes are stated in Fishgold v. Sullivan Corp., 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230, 167 A.L.R. 110. For emphasis the following excerpts from the opinion in that case are set forth:

At page 285 of 328 U.S., at page 1111 of 66 S.Ct., the Court says:

"This legislation is to be liberally construed for the benefit of those who left private life to serve their country in its hour of great need."

And at page 284 of 328 U.S., at page 1111 of 66 S.Ct.:

"He who was called to the colors was not to be penalized on his return by reason of his absence from his civilian job. He was, moreover, to gain by his service for his country an advantage which the law withheld from those who stayed behind. * * * Thus he (the veteran) does not step back on the seniority escalator at the point he stepped off. He steps back on at the precise point he would have occupied had he kept his position continuously during the war."

And at page 285, of 328 U.S., at page 1111 of 66 S.Ct.:

"As we have said, these provisions guarantee the veteran against loss of position or loss of seniority by reason of his absence. He acquires not only the same seniority he had; his service in the armed services is counted as service in the plant so that he does not lose ground by reason of his absence."

And at page 286 of 328 U.S., at page 1111 of 66 S.Ct.:

"Congress protected the veteran against loss of ground or demotion on his return."

When the facts of the instant case are analyzed with the foregoing pronouncements in mind, it is my opinion that the petitioner herein should prevail in spite of the technical persuasiveness of the respondent's position.

The petitioner had the right, as an attribute of his position as telegrapher, to

"bid in" an advertised dispatcher's position whenever he was highest on the telegraphers' seniority roster, or whenever those senior to him failed to ask for the position or to qualify. There occurred four vacancies among dispatchers while he was in military service. Two of these vacancies were filled by men who were junior to him on the seniority list. The third was filled by a person who was senior to him, but at a time subsequent to the filling of the first two vacancies. The fourth was bid in and eventually filled by the veteran. The petitioner was given no opportunity to bid in the first three vacancies, and even if he had been afforded the opportunity, he was not in a position to take the required examination. He bid in the first advertised vacancy which was offered to him. This happened while he was yet in the service. Furthermore, he took the required examination and was qualified as soon as he could do so upon his return to his employment.

■ Obviously, during his military service, and because of it, it was impossible for him to take the required examination and to qualify as a dispatcher. It is my opinion that such military service legally excused the petitioner from the non-performance on his part of the requirement to bid in the advertised vacancies filled by Middlekaup and Adkins and to qualify any sooner than he did qualify. In order to give effect to the underlying purposes of Section 8 of the statute, we must take the view that the first vacancy occurring after his entry into military service and to which his seniority status entitled him to qualify was kept open for him until he was discharged and actually in a position to take the required examination.

One of the regulations governing the dispatchers provides that: "Seniority as a dispatcher will date from date employee passes the required examination and qualifies as dispatcher." The regulation must be construed in connection with the other facts and in the light of the requirements of the statute in question. Middlekaup, Adkins and Knipp were bound by the regulations covering telegraphers. Their entries as dispatchers were burdened by any conditions or infirmities flowing both from those

regulations and applicable law. A regulation governing telegraphers requires that the highest person on the telegraphers' seniority roster be given the first opportunity to bid in and qualify for a vacancy occurring among the dispatchers within the territory. Section 8 of the Selective Training and Service Act requires that the returned veteran be restored to his former position of employment "without loss of seniority." The collective bargaining contract to which the petitioner was a party, and by which Middlekaup, Adkins and Knipp are bound, gave the petitioner a seniority right which would have been lost to him by reason of his military service, except for the fact that the law protects and restores to him that right. Not to give the petitioner a seniority date on the dispatchers' seniority roster ahead of Middlekaup is to penalize him on account of an absence which was caused by his military service. We are told in the Fishgold case that the Act is designed to protect the veteran from paying such a penalty.

Respondent urges that Hewitt v. System Federation No. 152, etc., 7 Cir., 161 F.2d 545, is controlling. It is my view that the facts were substantially different in that case and that, therefore, it is not binding here. In the Hewitt case there was no right under contract to promotion from car cleaner to car helper; neither was there any custom that required the oldest car cleaner to be up-graded to a car helper. In the case at bar the collective bargaining agreement covering the telegraphers required that vacancies occurring in the train dispatchers' positions be offered to the telegraphers in the order of their seniority. Accordingly, Morris had a contractual right to be promoted, if found to be qualified, whenever his seniority as a telegrapher permitted such promotion. Hewitt had no such right of promotion under either contract or custom.

■ The petitioner not only asks that he be given a seniority status as a dispatcher dating from June 3, 1945, but that he "be reimbursed for the loss of all wages suffered as a consequence of his denial to be reinstated in the position to which he is entitled under the Act." As to this latter demand, it must be pointed out that

actually the petitioner did not assume and discharge any duties as a dispatcher until August 3, 1946. Regardless of the seniority date to which he is entitled, he has no right to be paid as a dispatcher until he actually begins to perform the duties of that position. There is no evidence that the respondent was responsible for any delay in affording the petitioner the opportunity to qualify as a dispatcher as soon as possible after his discharge from military service. Therefore, there is no reason for it to pay for services which it did not receive and which the petitioner was not in a position to furnish.

### Conclusions of Law.

1. The court has jurisdiction of this action and proceeding under Section 8(e) of the Selective Training and Service Act of 1940, as amended.

2. The petitioner is entitled to have his name placed on the respondent's seniority list of train dispatchers in the Peru territory as of June 3, 1945, and ahead of H. E. Middlekaup.

3. The petitioner is not entitled to any additional compensation from respondent for the period of June 3, 1945, to August 3, 1946, as a result of his being given a seniority date of June 3, 1945, on the train dispatchers' seniority list.